STATE OF NORTH CAROLINA v. JEFFREY DOUGLAS LANCASTER

No. COA99-190

(Filed 21 March 2000)

## 1. Venue— change—publicity

The trial court did not err in a prosecution for robbery and other crimes by denying defendant's motion for a change of venue due to pretrial publicity. Of the three newspaper articles defendant submitted in support of his motion, two were published at the time of the robbery, nearly 16 months before the hearing on the motion to change venue, and the third related to defendant being attacked in jail and only briefly mentioned the circumstances surrounding his impending trial.

## 2. Rape— continuous act—multiple penetrations

The trial court did not err by denying a motion to dismiss one of two rape charges on the theory that there was only one continuous act. Each act of intercourse constitutes a distinct and

separate offense and the victim testified that she was penetrated from behind by defendant, that he forced her onto a closet shelf so that she was facing him, and that he again forcibly penetrated her.

**3. Kidnapping— instructions—false imprisonment as lesser included offense**

The trial court did not err in a second-degree kidnapping prosecution by not instructing the jury on the lesser-included offense of false imprisonment where the evidence shows that defendant confined, restrained, or removed the victim in order to commit a robbery and there was no evidence that defendant acted for any other purpose.

**4. Criminal Law— diminished capacity—sufficiency of the evidence**

The trial court did not err in a prosecution for rape and kidnaping by denying defendant's request for an instruction on diminished capacity and voluntary intoxication where there was insufficient evidence that defendant was unable to form the requisite intent.

**5. Kidnapping— indictment and instruction—use of conjunctive and disjunctive**

The trial court did not err in its instructions on kidnapping where the indictment charged defendant with kidnapping by confining, restraining, and removing, and the instruction allowed a conviction upon a showing of either confining, restraining, or removing. There was substantial evidence to support any of the three methods set out in the indictment and an indictment alleging all three theories is sufficient and puts defendant on notice that the State intends to show that defendant committed kidnapping in any one of the three theories.

**6. Kidnapping— instructions—restraint and removal separate from armed robbery**

The trial court's instructions in a kidnapping and armed robbery prosecution were not erroneous where defendant contended that the instruction was ambiguous as to whether the kidnapping was an inherent and inevitable feature of armed robbery, but the court gave the pattern jury instruction that a finding of kidnapping was warranted if defendant's act of confinement, restraint, or removal was a separate complete act independent of and apart

from armed robbery or common law robbery, and the evidence established that defendant's binding of the victim's hands and feet, dragging her 15 feet into a storage closet, and moving her several times while in the closet were acts independent of and apart from the robbery.

**7. Constitutional Law— effective assistance of counsel— items not introduced**

A kidnapping, rape, and robbery defendant did not have ineffective assistance of counsel where defendant's counsel did not introduce an SBI lab report of defendant's DNA and did not submit medical records regarding defendant's drug use and addiction. Both decisions were strategic and neither approach the levels required by *State v. Boswell*, 312 N.C. 553.

Appeal by defendant from judgments entered 2 October 1998 by Judge Charles H. Henry in Craven County Superior Court. Heard in the Court of Appeals 10 January 2000.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Robert T. Hargett, for the State.*

*McCotter, McAfee & Ashton, PLLC, by Rudolph A. Ashton, III, for defendant-appellant.*

WALKER, Judge.

Defendant was convicted of first degree rape, second degree kidnapping, attempted first degree rape, and robbery with a dangerous weapon and was sentenced to a minimum of 439 months and a maximum of 560 months in prison. The defendant moved for a change of venue and to dismiss one of the rape charges, both of which the trial court denied.

The State's evidence tended to show the following: At approximately 1:00 a.m. on 29 May 1997, R.R. ("the victim") was working as the desk clerk at the Comfort Inn in Havelock, North Carolina. The victim testified that the defendant entered the building and inquired about room rates. The defendant said he would check the rates across the street at another hotel and left. The victim testified that defendant did not appear intoxicated or in any way impaired. When he returned, the defendant jumped over the counter and pulled out a box cutter. He then grabbed the victim and said: "Don't scream or I'll kill you." He dragged her approximately 15 feet into a small

storage closet. Defendant used wire ties to bind the victim's hands behind her back. He left the victim in the storage closet and returned to the front office, where he took approximately $300.00 from the cash register.

Defendant returned to the closet and bound the victim's ankles with wire ties. Defendant pulled down the victim's pants and underpants and ordered her to spread her legs. Defendant then penetrated the victim from behind. The victim testified she felt defendant's penis inside her vagina and that he then became frustrated and agitated. Defendant then picked up the victim and threw her onto a shelf so that she was facing him. He then ripped the victim's shirt and bra off. Defendant ordered the victim to spread her legs and he forcibly penetrated her vagina with his penis a second time. Defendant withdrew his penis and masturbated, ejaculating on the victim's clothing. Defendant then pulled up the victim's pants and taped her mouth with masking tape before leaving.

After the victim called the police, she was transported to the emergency room at the Craven Regional Medical Center and examined by Dr. Mark Anthony Willi. Dr. Willi testified that his examination of the victim's vagina yielded the presence of a discharge he thought was semen.

On 30 May 1997, defendant's brother, Jimmy Lancaster, assisted Trooper Gregory Steffens of the Highway Patrol in searching for the defendant. After locating the defendant inside his vehicle, Trooper Steffens blocked the defendant's vehicle in a parking lot and the defendant subsequently fled on foot. Trooper Steffens apprehended the defendant and subdued him with pepper spray.

The defendant testified that he is a crack cocaine addict and that prior to the attack, he purchased and smoked crack cocaine in Maysville, North Carolina, until he ran out of money. Defendant then drove to Havelock to rob someone for money to purchase more crack cocaine. Defendant testified that he entered the Comfort Inn, asked the victim for the money and took her to the closet but that he did not drag or force her there. He admitted taking the money out of the cash register and returning to the closet where the victim was located. Further, he undressed the victim but he could not obtain an erection and there was no intercourse between him and the victim.

Defendant also testified that after he left the Comfort Inn, the defendant returned to Maysville but did not find anyone at the origi-

nal crack house. He drove towards New Bern, North Carolina, and found another crack house where he purchased and smoked more crack cocaine. Defendant then returned to Havelock and drove past the Comfort Inn two times to observe any developments. Defendant then drove to "Slope," North Carolina, purchased and smoked more crack cocaine, and finally returned home sometime after 5:00 a.m. Upon returning home, defendant told his mother, "Mama, I did something I shouldn't have done last night. I robbed somebody."

Other witnesses testified to the defendant's drug addiction and mental treatment problems. Bob Mashburn, defendant's sponsor in the high risk cocaine group at the Neuse Mental Health Center in Morehead City, North Carolina, testified about defendant's cocaine addiction. Susan Eatmon, defendant's employer, also testified to his drug problems. Ron Bancroft, defendant's counselor at the Neuse Mental Health Center, testified about defendant's drug problems and depression. Bancroft further stated that defendant's "high" would have been over at the time of the robbery and rape; however, his cocaine addiction could have a negative impact on his ability to think through the consequences of his action.

## I.

[1] Defendant first assigns as error the trial court's denial of his motion to change venue, arguing that pre-trial publicity in Craven County prejudiced him so that he could not obtain a fair and impartial trial. Specifically, defendant cites three newspaper articles published in the *Sun Journal*, the only daily newspaper published in Craven County, along with similar stories appearing on local radio and television stations.

After a hearing on defendant's motion, the trial court's order denying the motion stated in part:

4. From May 29, 1997, the date of the offense, to the date of the hearing of this motion, September 21, 1998, there have been three newspaper articles published in *The Sun Journal.* Two of those articles were printed back in May, 1997, the time of the commission of these offenses, and the third was published in August, 1998.

5. The news accounts of these offenses and the subsequent arrest of the defendant were not excessive in number or in length.

6. That all three articles were factual and non-inflammatory news accounts of the rape, robbery, and kidnapping and the subsequent arrest of the defendant.

7. That the defense in jury voir dire will be able to determine whether jurors have knowledge of the case and, if so, whether they can set aside what they have previously heard or read about this case, and decide this case based on the evidence and testimony offered during the trial.

8. That the defendant has not shown that it is reasonably likely that prospective jurors would base their decisions in this case upon pretrial information from either the print or television media or from word of mouth.

9. That the defendant can receive in Craven County a fair and impartial trial.

A motion for a change of venue is addressed to the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *State v. Pendergrass*, 111 N.C. App. 310, 316, 432 S.E.2d 403, 407 (1993). In order to obtain a change of venue, a defendant must establish that it is reasonably likely that prospective jurors would base their decision upon pre-trial information rather than evidence presented at trial and would be unable to remove any preconceived impressions they might have formed. *State v. Jerrett*, 309 N.C. 239, 307 S.E.2d 339 (1983). Factual news accounts regarding the commission of a crime and the pre-trial proceedings do not of themselves warrant a change of venue. *State v. Madric*, 328 N.C. 223, 400 S.E.2d 31 (1991). If factual news articles are non-inflammatory and contain information that for the most part could be offered at defendant's trial, a motion for change of venue is properly denied. *State v. Watson*, 310 N.C. 384, 312 S.E.2d 448 (1984).

Of the three newspaper articles defendant submitted in support of his motion, two were published at the time of the robbery, which was nearly 16 months prior to the hearing on defendant's motion to change venue. The third article, published a month before the venue hearing, relates to the defendant being attacked while awaiting trial in jail and only briefly mentions the circumstances surrounding the defendant's impending trial. Defendant has failed to meet his burden to show that he could not receive a fair trial in Craven County and the trial court did not err in denying his motion to change venue.

## II.

**[2]** The defendant next argues that the trial court erred in denying his motion to dismiss one of the two rape charges submitted to the jury. Specifically, if an act of rape occurred, there was only one single continuous act and not two separate acts.

"Generally rape is not a continuous offense, but each act of intercourse constitutes a distinct and separate offense." *State v. Dudley*, 319 N.C. 656, 659, 356 S.E.2d 361, 363 (1987) (*quoting* 75 C.J.S. Rape § 4); *State v. Small*, 31 N.C. App. 556, 559, 230 S.E.2d 425, 427 (1976), *disc. review denied*, 291 N.C. 715, 232 S.E.2d 207 (1977). Each act of forcible vaginal penetration constitutes a separate rape. *State v. Midyette*, 87 N.C. App. 199, 202, 360 S.E.2d 507, 509 (1987), *aff'd*, 322 N.C. 108, 366 S.E.2d 440 (1988). "Evidence of the slightest penetration of the female sex organ by the male sex organ is sufficient for vaginal intercourse and the emission of semen need not be shown to prove the offense of rape." *State v. Williams*, 314 N.C. 337, 351, 333 S.E.2d 708, 718 (1985); *State v. Brown*, 312 N.C. 237, 321 S.E.2d 856 (1984); *State v. Sneeden*, 274 N.C. 498, 164 S.E.2d 190 (1968); *State v. Monds*, 130 N.C. 697, 41 S.E. 789 (1902).

The victim testified that she was penetrated from behind by the defendant. Then, he forced her onto a shelf in the closet so that she was facing him, and he again forcibly penetrated her a second time. Thus, there was sufficient evidence of two separate acts of rape and the trial court did not err in denying defendant's motion to dismiss one of the rape charges.

## III.

**[3]** Next, defendant argues that the trial court erred in refusing to instruct the jury on the lesser-included offense of false imprisonment with regard to the kidnapping charge.

Pursuant to N.C. Gen. Stat. § 14-39(a) (1999), kidnapping is an unlawful, nonconsensual confinement, restraint or removal from one place to another for the purpose of committing specified acts. The State need only prove that defendant intended to commit one of the specified acts in order to sustain its burden of proof as to that element of the crime. *State v. Surrett*, 109 N.C. App. 344, 348-49, 427 S.E.2d 124, 126 (1993). Here, the defendant was charged with kidnapping the victim for the purpose of facilitating the commission of a felony. *See* N.C. Gen. Stat. § 14-39(a)(2).

Where there is no evidence from which the jury could find that the crime of lesser degree was committed, the trial court need not instruct on a lesser-included offense. *Surrett*, 109 N.C. App. at 351, 427 S.E.2d at 128. The difference between kidnapping and the lesser-included offense of false imprisonment is the purpose of the confinement, restraint, or removal of another person. *State v. Claypoole*, 118 N.C. App. 714, 717-18, 457 S.E.2d 322, 324 (1995). If the purpose of the restraint was to accomplish one of the purposes enumerated in N.C. Gen. Stat. § 14-39, then the offense is kidnapping. *Id.* However, if the unlawful restraint occurs without any of the purposes specified in the statute, the offense is false imprisonment. *State v. Pigott*, 331 N.C. 199, 210, 415 S.E.2d 555, 562 (1992). Since the evidence shows that defendant confined, restrained, or removed the victim in order to commit a robbery and there was no evidence indicating that defendant acted for any other purpose, the trial court did not err in failing to instruct on the lesser-included offense. *See Surrett*, 109 N.C. App. at 352, 427 S.E.2d at 128.

IV.

**[4]** Defendant's next two assignments of error concern the trial court's denial of his requests for jury instructions on diminished capacity and voluntary intoxication. We discuss each in turn.

Defendant argues that the evidence of defendant's history of drug addiction, as testified to by his drug counselors and employer, along with evidence of defendant's mental condition on the night of the robbery, constituted sufficient evidence such that a jury instruction on diminished capacity was warranted.

An instruction on diminished capacity is warranted where the evidence of defendant's mental condition is sufficient to cause a reasonable doubt in the mind of a rational trier-of-fact as to whether the defendant had the ability to form the necessary specific intent to commit the crimes for which he is charged. *State v. Clark*, 324 N.C. 146, 163, 377 S.E.2d 54, 64 (1989).

Mr. Bancroft was certified as an expert in the fields of substance abuse addictions and cognizant behaviors. He testified that defendant could have been impaired at the time of the robbery, but that "the euphoric high would have probably been over." Additionally, Bancroft testified that such an impairment "could have had a negative impact" upon the defendant's ability to form a plan or course of conduct. In a *voir dire* examination of Bancroft, he stated that he could not testify about the defendant's ability to think, make judgments, and distin-

guish right from wrong at the time these acts occurred. Bancroft's testimony only referred to the effect cocaine *could* have had on the defendant, based on his experience of how cocaine affects people in general.

Defendant testified that he smoked crack and drank three or four beers over the course of the night. After looking around the Comfort Inn, defendant returned with a box cutter and wire ties to bind the victim. Defendant asked the victim for the keys to lock the front door. After raping the victim twice, defendant taped her mouth shut and left her in a closet before leaving the scene. Defendant drove through parts of eastern North Carolina in search of crack cocaine before committing the robbery and twice drove past the Comfort Inn after the robbery to see what developments had occurred. Furthermore, the victim testified that defendant did not appear intoxicated or in any way impaired during the ordeal.

Viewed in the light most favorable to the defendant, there was insufficient evidence of defendant's mental condition to create a reasonable doubt in the jurors' minds that defendant was unable to form the specific intent necessary to commit these crimes; therefore, the trial court did not err in denying a request for jury instructions on diminished capacity.

To be entitled to an instruction on voluntary intoxication, a defendant must produce substantial evidence which would support a conclusion by the judge that he was "so completely intoxicated and overthrown to render him utterly incapable of forming [the intent required to commit the offense.]" *Clark*, 324 N.C. at 161, 377 S.E.2d at 63; *State v. Mash*, 323 N.C. 339, 346, 372 S.E.2d 532, 536 (1988). "In the absence of evidence of intoxication to a degree precluding the ability to form a specific intent to [commit the offenses], the court is not required to charge the jury thereon." *State v. Washington*, 71 N.C. App. 767, 770, 323 S.E.2d 420, 423 (1984), *cert. denied*, 315 N.C. 396, 339 S.E.2d 412 (1986); *State v. Gerald*, 304 N.C. 511, 521, 284 S.E.2d 312, 319 (1981). Evidence of mere intoxication is not enough to meet defendant's burden of production. *State v. McQueen*, 324 N.C. 118, 141, 377 S.E.2d 38, 51 (1989).

Again, viewed in the light most favorable to the defendant, there was no substantial evidence that the defendant was utterly incapable of forming the requisite intent to commit these crimes and therefore defendant was not entitled to a voluntary intoxication jury instruction.

V.

**[5]** Defendant next argues that the jury instruction on kidnapping was erroneous in that it was "disjunctively nonspecific and constituted plain error." The indictment charged defendant with kidnapping by "unlawfully confining, restraining and removing her from one place to another without her consent." Defendant argues that since the indictment used the conjunctive "and" to describe the State's allegations, the trial court's use of the disjunctive "or" in the jury instruction on kidnapping was error because it did not accurately express the State's allegations.

The indictment for kidnapping stated in part:

The jurors for the State upon their oath present that . . . the defendant . . . unlawfully, willfully and feloniously did kidnap [the victim], who had attained the age of 16 years, by unlawfully confining, restraining, *and* removing her from one place to another . . . for the purpose of facilitating the commission of a felony.

(Emphasis added). The trial court instructed the jury in part that:

[I]f you find from the evidence beyond a reasonable doubt that . . ., the defendant unlawfully confined a person, restrained a person, *or* removed a person from one place to another, and that the person did not consent to this confinement, restraint *or* removal and that this was done for the purpose of facilitating the defendant's commission of armed robbery or common law robbery, and that this confinement, restraint *or* removal was a separate complete act independent of and apart from the armed robbery or common law robbery, it would be your duty to return a verdict of guilty of second-degree kidnapping.

(Emphasis added).

If the defendant fails to object to a jury instruction, that instruction is reviewable on a plain error standard on appeal. *State v. Raynor*, 128 N.C. App. 244, 247, 495 S.E.2d 176, 178 (1998). The plain error standard requires a defendant to make a showing that absent the erroneous instruction, a jury would not have found him guilty of the offense charged. *Id.* To rise to the level of plain error, the error in the instructions must be "so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him." *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993).

Our Supreme Court has held that a jury instruction on a theory of kidnapping different than the theory charged in the indictment was reversible error. *See State v. Tucker*, 317 N.C. 532, 346 S.E.2d 417 (1986). In *Tucker*, the defendant did not object to the jury instruction and argued plain error on appeal. The indictment charged the defendant with kidnapping by "unlawfully removing [the victim] from one place to another." *Id.* at 537, 346 S.E.2d at 420. The jury instruction allowed a conviction for kidnapping if the jury found that defendant unlawfully "restrained" the victim. *Id.* The *Tucker* court stated that "it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment." *Tucker*, 317 N.C. at 537-38, 346 S.E.2d at 420 (*quoting State v. Taylor*, 301 N.C. 164, 170, 270 S.E.2d 409, 413 (1980)). The *Tucker* court went on to find the error reversible under a plain error standard, holding that "[i]n light of the highly conflicting evidence in the instant kidnapping case on the unlawful removal and restraint issues, we think the instructional error might have . . . " 'tilted the scales" and caused the jury to reach its verdict convicting the defendant.' " *Id.* at 540, 346 S.E.2d at 422 (citations omitted).

Recently, in *State v. Dominie*, 134 N.C. App. 445, 448, 518 S.E.2d 32, 35 (1999), this Court, following the mandate of *Tucker*, held that an indictment limiting the kidnapping charge to "removing" the victim, followed by a "confining, restraining, or removing" jury instruction, constituted reversible error under a plain error standard.

We find *Tucker* and *Dominie* distinguishable. In both cases, the indictment limited the alleged kidnapping to one theory: "removing" the victim from one place to another. However, the jury instructions in each case allowed for a conviction of kidnapping based on a different theory than the one set out in the indictment. Additionally, the *Tucker* court found the error reversible based on the conflicting evidence on the removal and restraint issues.

Here, the indictment charged defendant with kidnapping by "confining, restraining, and removing" the victim. The jury instruction allowed a conviction upon a showing of either confining, restraining, or removing, which is not an "abstract theory not supported by the bill of indictment." *See Tucker*, 317 N.C. at 537-38, 346 S.E.2d at 420.

The evidence showed that the defendant bound the victim's hands behind her back with wire ties. Then, he dragged her approximately 15 feet and forced her into a storage closet. He left the victim in the

closet and returned to the front office to empty the cash register. Upon returning to the closet, the defendant bound the victim's ankles with wire ties. The defendant then moved the victim to the corner of the closet and raped her twice. There was substantial evidence to support any of the three methods set out in the indictment.

Defendant argues that by asserting three theories in the indictment, the State has confined itself to proving that all three theories were used in order to convict the defendant. We disagree.

A bill of indictment is sufficient if it charges the offense in a plain, intelligible manner, with averments sufficient to enable the court to proceed to judgment and to bar a subsequent prosecution for the same offense. *State v. Taylor*, 280 N.C. 273, 185 S.E.2d 677 (1972). The purpose of the indictment is to put the defendant on notice of the offense with which he is charged and to allow him to prepare a defense to that charge. *State v. Sumner*, 232 N.C. 386, 61 S.E.2d 84 (1950). The State need only prove that defendant intended to confine, restrain, or remove the victim in order to sustain its burden of proof as to that element of the crime. N.C. Gen. Stat. § 14-39 (1999); *Surrett*, 109 N.C. App. at 348-49, 427 S.E.2d at 126.

Since an indictment need only allege one statutory theory, an indictment alleging all three theories is sufficient and puts the defendant on notice that the State intends to show that the defendant committed kidnapping in any one of the three theories. The jury instruction correctly allowed any one of the three theories to serve as the basis for a finding of kidnapping; therefore, the jury instruction accurately reflected the three permissible theories alleged in the indictment. Accordingly, the trial court did not err in its jury instruction on kidnapping.

[6] Additionally, defendant argues that the kidnapping jury instruction erroneously stated the law in that it was "ambiguous as to whether the kidnapping was an inherent and an inevitable feature of armed robbery," and that this error also constitutes plain error.

Defendant did not make an assignment of error in the record on this basis. Instead, defendant includes this argument under Assignment of Error Number 6, which states: "The jury instruction on kidnapping was erroneous in that it was disjunctively nonspecific, and it constituted plain error."

The scope of appellate review is limited to those issues presented by assignment of error set out in the record on appeal. N.C.R. App. P.

10(a) (1999); *Koufman v. Koufman*, 330 N.C. 93, 408 S.E.2d 729 (1991). No assignment of error corresponds to the issue presented and thus the argument is not properly before this Court. However, pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure, at our discretion, we elect to address the merits of defendant's argument.

Defendant correctly cites *State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978) and its progeny for the principle that any restraint or removal which is also "an inherent and inevitable feature of" armed robbery cannot also be the basis for a conviction of second degree kidnapping, based on the constitutional prohibition against double jeopardy. *See e.g. State v. Irwin*, 304 N.C. 93, 282 S.E.2d 439 (1981); *State v. Weaver*, 123 N.C. App. 276, 473 S.E.2d 362, *disc. review denied*, 344 N.C. 636, 477 S.E.2d 53 (1996); *State v. Beatty*, 347 N.C. 555, 495 S.E.2d 367 (1998). Defendant argues that the trial court's charge is an incorrect statement of the law and was plain error.

The jury instructions on kidnapping given by the trial court, pursuant to N.C.P.I.-Crim. 210.35, stated that if the defendant's act of "confinement, restraint or removal was a separate complete act independent of and apart from the armed robbery or common law robbery," then a finding of kidnapping was warranted. *Fulcher* and its progeny establish that if the act committed by defendant is "an inherent, inevitable feature" of the other felony (*e.g.* armed robbery), then a finding of kidnapping is constitutionally impermissible. Thus, N.C.P.I.—Crim. 210.35 is not in conflict with *Fulcher* and is a correct statement of the law.

Here, the evidence established that defendant's binding of the victim's hands and feet, his dragging her 15 feet into a storage closet, and his moving her several times while in the closet, all were acts independent of and apart from the act of armed robbery. Accordingly, defendant's argument is without merit.

VI.

[7] Defendant's two remaining assignments of error are based upon allegations of ineffective assistance of counsel. Defendant first contends that trial counsel's failure to submit into evidence the SBI lab report of defendant's DNA was error and prejudicial to his defense. Secondly, defendant argues that trial counsel erred by not submitting into evidence additional medical records regarding defendant's drug use and addiction.

"When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688, 80 L. Ed. 2d 674, 693 (1984). In order to meet this burden, defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985). "Ineffective assistance of counsel claims are 'not intended to promote judicial second-guessing on questions of strategy as basic as the handling of a witness.'" *State v. Lowery*, 318 N.C. 54, 68, 347 S.E.2d 729, 739 (1986) (citations omitted).

Our review of the record reveals that both decisions made by trial counsel were strategic decisions and that neither approach the levels required by *Braswell*. Defendant is unable to establish that either decision deprived defendant of a fair trial and thus defendant's contentions are without merit.

In sum, the defendant received a fair trial free of prejudicial error.

No error.

Chief Judge EAGLES and Judge WYNN concur.