STATE OF NORTH CAROLINA v. GILBERT GARCIA, DEFENDANT

No. COA05-127

(Filed 15 November 2005)

**1. Burglary and Unlawful Breaking or Entering— motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motions to dismiss the charge of breaking or entering, because: (1) defendant testified that he went into a company's building through the

front door that had previously been closed after a companion entered the building through a skylight and let him in, thus meeting the entering a building element; and (2) the evidence viewed in the light most favorable to the State showed that defendant committed the offense with the intention to steal property from the company.

**2. Constitutional Law— right to confrontation—testimonial evidence—codefendant's written confession—harmless error**

Although defendant's right of confrontation was violated in a felonious breaking and entering case by the admission of a coparticipant's written statement into evidence when it was testimonial evidence and defendant did not have a prior opportunity to cross-examine the coparticipant at any point before the statement was introduced into evidence, the error was harmless beyond a reasonable doubt because there was sufficient evidence of the intent element of the crime of felonious breaking and entering without the coparticipant's statement.

**3. Criminal Law— instructions—diminished capacity**

The trial court did not commit plain error in a felonious breaking and entering case by failing to instruct the jury on diminished capacity, because defendant's two statements regarding his mental condition were insufficient to create a reasonable doubt in the jurors' minds that defendant was unable to form the specific intent necessary to commit the crime of breaking and entering.

**4. Sentencing— aggravated range—*Blakely* error**

The trial court in a felonious breaking and entering case did not sentence defendant in the aggravated range in violation of his Sixth Amendment right to a jury trial because, contrary to defendant's assertion, his sentence falls within the presumptive range. Thus, the trial court's findings of aggravating factors not admitted by defendant or submitted to the jury did not violate *Blakely v. Washington*, 542 U.S. 296 (2004).

**5. Sentencing— enhancement for habitual offenders—not cruel and unusual punishment**

Defendant's sentence as an habitual felon did not constitute cruel and unusual punishment in violation of his Eighth Amendment rights in a felonious breaking and entering case

STATE v. GARCIA

[174 N.C. App. 498 (2005)]

because: (1) nothing in the Eighth Amendment prohibits our legislature from enhancing punishment for habitual offenders; and (2) defendant was sentenced within the presumptive range, and this case was not exceedingly unusual.

Appeal by Defendant from judgment entered 10 February 2004 by Judge William Z. Wood, Jr. in Superior Court, Forsyth County. Heard in the Court of Appeals 11 October 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General T. Lane Mallonee, Jr., for the State.*

*Daniel F. Read, for defendant-appellant.*

WYNN, Judge.

The Confrontation Clause bars the admission of out-of-court testimonial statements unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68, 158 L. Ed. 2d 177, 203 (2004). In this case, Defendant contends the admission of the co-defendant's written confession violated the confrontation clause. While we agree that the admission of the statement violated the confrontation clause, we hold that under the facts of this case, such error was harmless. Further, we find no error in the trial court's failure to instruct on diminished capacity nor in its sentence of Defendant within the presumptive range.

The State presented evidence at trial tending to show that around 2:00 a.m. on 19 May 2003, two men flagged down a marked patrol car being driven by Deputy Ed Gaylor. The men stated that they had just observed a white male and two black males going into the front door of a business on Brookstown Avenue. They directed Deputy Gaylor to 627 Brookstown Avenue, the business of Essex Incorporated where he saw a light on inside the building and an ajarred front door. Responding to Deputy Gaylor's call for assistance, approximately fifteen to twenty police officers arrived, including Corporal Jimmy Edwards. The police issued a command over the public address system for the people inside the building to come out. Approximately five to ten minutes later, Defendant Gilbert Garcia, Frank Gordon, and James Reese came out of the building and were taken into custody.

After Defendant's arrest, Corporal Edwards went inside the building and found empty cabinets, open drawers, an axe blade on the

floor, and a phone off the hook. He also found an open book bag containing guitar pedals, a paint ball gun and a mask. Another book bag contained pliers, a desk clock, and a wallet; and another book bag contained a knife. The phone lines to the business had been cut and the company's safe had been opened and moved.

At trial, the trial court admitted into evidence, over Defendant's objection, the following written statement by James Reese given to the police after he waived his rights:

First we were sitting at James Gohens' apartment on 615 N Spring St Apt 4. James came up with the plan to go into the Essex computer store. I'm the one that went through the roof and let everyone else in. We went in for money. I picked up a bookbag. The safe was open. Nothing was in the safe the door was open and the keys were in it. I don't know what my partners were doing we were all in separate rooms. I heard someone outside and then heard the PA system telling us to come out. I went through some drawers and stuff but I didn't take anything. I don't know if my partners took anything. There was a piece of glass on the roof I slid the glass out of the way and grabbed onto a wooden beam and let myself into the store. We took the bookbags with us inside. There was a laptop in the bookbag I was gonna take. I have no idea how long we were in there maybe 30 mins (sic) before the police got there. The liquor bottle was mine.

Defendant testified at trial that he has gastro-intestinal cancer and on 18 May 2003, he had taken five Demerol, vitamins, and steroids, prescribed by his oncologist. He stated that he and Mr. Gordon met with Mr. Reese and a man named "Taiwan" on that date. A friend of Taiwan's needed a computer and Mr. Reese told them he had a friend who was moving a business and could get access to the building to "look at some computer equipment." Defendant and Mr. Gordon met Mr. Reese at Essex and he came through the front door to let them in. Defendant stated that at that time he felt like he was "in a fog . . . numb." He then sat in a chair because he felt nauseous, drank a Coke and smoked a cigarette until the police arrived.

Following the denial of Defendant's motions to dismiss, a jury found Defendant guilty of felonious breaking and entering and of being an habitual felon. Upon finding an aggravating factor that: "The defendant joined with more than one other person in committing the offense and was not charged with committing a conspiracy[,]" the

trial court sentenced Defendant in the "aggravated range" to a term of 133 to 169 months imprisonment.

On appeal, Defendant argues that the trial court: (1) erred in denying his motions to dismiss the breaking and entering charge; (2) erred in admitting Mr. Reese's written statement into evidence; (3) committed plain error by failing to instruct the jury on diminished capacity; (4) erred in sentencing him in the aggravated range in violation of his Sixth Amendment rights; and (5) erred in imposing a sentence that was so disproportionate that it violates the Eighth Amendment.

[1] First, Defendant contends the trial court erred in denying his motions to dismiss because the State failed to present sufficient evidence on the element of intent to commit larceny. We disagree.

When reviewing a motion to dismiss, we view "the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Morgan*, 359 N.C. 131, 161, 604 S.E.2d 886, 904 (2004) (citing *State v. Gladden*, 315 N.C. 398, 430, 340 S.E.2d 673, 693, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986)), *cert. denied*, —— U.S. ——, —— L. Ed. 2d —— (04-9885) (3 October 2005). If we find that "substantial evidence exists to support each essential element of the crime charged and that defendant was the perpetrator, it is proper for the trial court to [have denied] the motion." *Id.* (citing *State v. Malloy*, 309 N.C. 176, 178, 305 S.E.2d 718, 720 (1983)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citing *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980)).

The elements of felonious breaking and entering are: (1) the breaking and entering (2) of any building (3) with the intent to commit any felony or larceny therein. N.C. Gen. Stat. § 14-54(a) (2004); *State v. Jones*, 151 N.C. App. 317, 328, 566 S.E.2d 112, 119 (2002). "A breaking or entering condemned by the statute may be shown to be a mere pushing or pulling open of an unlocked door or the raising or lowering of an unlocked window, or the opening of a locked door with a key." *State v. Bronson*, 10 N.C. App. 638, 640, 179 S.E.2d 823, 824-25 (1971) (citing *State v. Tippett*, 270 N.C. 588, 155 S.E.2d 269 (1967)). Defendant testified that he went into the building through the front door that had previously been closed, thus meeting the entering a building element. *See* N.C. Gen. Stat. § 14-54(a); *Bronson*, 10 N.C. App. at 640, 179 S.E.2d at 824-25.

STATE v. GARCIA

[174 N.C. App. 498 (2005)]

"The jury may infer the requisite specific intent to commit larceny at the time of the breaking or entering from the acts and conduct of defendant and the general circumstances existing at the time of the alleged commission of the offense charged." *State v. Costigan,* 51 N.C. App. 442, 445, 276 S.E.2d 467, 469 (1981) (internal cites omitted). Further, under the acting in concert theory, if a defendant joins another person "in a purpose to commit a crime, each of them, if actually or constructively present, is . . . guilty as a principal if the other commits that particular crime[.]" *State v. Barnes,* 345 N.C. 184, 231, 481 S.E.2d 44, 70 (1997) (quoting *State v. Erlewine,* 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991)).

Defendant argues that the evidence only raises a conjecture or suspicion of his intent to commit a felony. But the evidence, viewed in the light most favorable to the State, shows that Defendant, along with Mr. Reese and Mr. Gordon, entered a building belonging to Essex at approximately 2:00 a.m. The business was closed and all the doors and windows locked. Mr. Reese entered the building by climbing a ladder, moving a piece of glass, and dropping through a skylight. Defendant had been informed previously that evening that Essex had a computer that could be resold, and the building had no alarm. Samuel Parker, the office manager, testified that none of the men had permission to be in the building and the phone lines to the business had been cut and were not working.

The evidence also shows that, following Defendant's arrest, cabinets had their contents removed, drawers were open, an axe blade was on the floor, other things were on the floor and appeared out of place, and a phone was off the hook. Also, items belonging to Essex were found in book bags, including a guitar pedal, a paint ball gun and mask, a desk clock, and a laptop computer. We conclude that viewing this evidence in the light most favorable to the State, the evidence shows that Defendant unlawfully entered the building, and he committed the offense with the intention to steal property from Essex. *See Morgan,* 359 N.C. at 161, 604 S.E.2d at 904. Therefore, we overrule this assignment of error.

[2] Next, Defendant argues that the trial court erred in admitting Mr. Reese's written statement into evidence as it was inadmissible hearsay and deprived him of his constitutional right to confront a witness pursuant to *Crawford,* 541 U.S. 36, 158 L. Ed. 2d 177.

In *Crawford,* the United States Supreme Court held that the Confrontation Clause bars the admission of out-of-court testimonial

statements unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine him or her. *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203. In evaluating whether a defendant's right to confrontation has been violated, we must determine: "(1) whether the evidence admitted was testimonial in nature; (2) whether the trial court properly ruled the declarant was unavailable; and (3) whether defendant had an opportunity to cross-examine the declarant." *State v. Clark*, 165 N.C. App. 279, 283, 598 S.E.2d 213, 217, *disc. review denied*, 358 N.C. 734, 601 S.E.2d 866 (2004).

"Statements taken by police officers in the course of interrogations are . . . testimonial under even a narrow standard." *Crawford*, 541 U.S. at 52, 158 L. Ed. 2d at 193. This Court interpreted *Crawford* and the nature of the term "police interrogations" in *State v. Pullen*, 163 N.C. App. 696, 594 S.E.2d 248 (2004). In *Pullen*, this Court ruled that a non-joined co-defendant's confession made to police in the course of their investigation was testimonial in nature. *Pullen*, 163 N.C. App. at 701, 594 S.E.2d at 252. Therefore, Mr. Reese's written confession made to the police during his interrogation is testimonial. *See id*.

Since Mr. Reese's written statement was testimonial, for the statement to be admissible, Mr. Reese must have been unavailable and Defendant needed to have had an opportunity to cross-examine him. *See Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203; *Clark*, 165 N.C. App. at 283, 598 S.E.2d at 217. But the record is devoid of evidence that Defendant had a prior opportunity to cross-examine Mr. Reese at any point before the statement was introduced into evidence; accordingly, we hold that the trial court erred in allowing the State to introduce Mr. Reese's written statement.

Nonetheless, we must determine whether the trial court's error prejudiced Defendant. *State v. Bell*, 359 N.C. 1, 36, 603 S.E.2d 93, 116 (2004), *cert. denied*, —— U.S. ——, 161 L. Ed. 2d 1094 (2005). Because this error is one with constitutional implications, the State bears the burden of proving that the error was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (2004); *State v. Lewis*, 360 N.C. 1, —— S.E.2d —— (2005). One way the State may meet its burden is by showing that there is overwhelming evidence of Defendant's guilt. *Bell*, 359 N.C. at 36, 603 S.E.2d at 116.

Defendant argues that Mr. Reese's statement was the only evidence of intent to commit larceny, as the statement indicated that he and his partners went in "for money." But as we have stated earlier,

there was sufficient evidence of the intent element of the crime of felonious breaking and entering, without Mr. Reese's statement. Therefore, while the trial court erred in admitting Mr. Reese's statement into evidence, the error was not prejudicial.

**[3]** Defendant next argues that the trial court committed plain error by failing to instruct the jury on diminished capacity. We disagree.

Our Supreme Court adopted the plain error rule as an exception to the appellate court requirement of preserving basis for assignments of error at the trial court level. *See State v. Odom,* 307 N.C. 655, 300 S.E.2d 375 (1983) (applied to assignments of error regarding jury instructions); *see also* N.C. R. App. P. 10(c)(4). The proponent must show that:

> [A]fter reviewing the entire record, it can be said the claimed error is a *'fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.'

*Odom,* 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir. 1982) (footnotes omitted)).

We examine the entire record to decide whether the error "had a probable impact on the jury's finding of guilt." *Odom,* 307 N.C. at 661, 300 S.E.2d at 379 (citation omitted). We determine whether the jury would have returned a different verdict absent the error. *State v. Riddle,* 316 N.C. 152, 161, 340 S.E.2d 75, 80 (1986).

An instruction on diminished capacity is warranted where the evidence of the defendant's mental condition is sufficient to raise a reasonable doubt in the mind of a rational trier-of-fact as to whether the defendant had the ability to form the necessary specific intent to commit the crimes for which he is charged. *State v. Clark,* 324 N.C. 146, 163, 377 S.E.2d 54, 64 (1989). In *State v. Lancaster,* this Court held the evidence insufficient to warrant an instruction on diminished capacity. 137 N.C. App. 37, 527 S.E.2d 61, *disc. review denied in part and allowed in part on other grounds,* 352 N.C. 680, 545 S.E.2d 723 (2000). There, the defendant presented expert testimony

evidence of substance abuse addictions and other behaviors and the defendant himself testified he had smoked crack cocaine and drank several beers over the course of the evening in question. *Id.* at 44-45, 527 S.E.2d at 67. This Court concluded "there was insufficient evidence of defendant's mental condition to create a reasonable doubt in the jurors' minds that defendant was unable to form the specific intent necessary to commit these crimes[.]" *Id.* at 45, 527 S.E.2d at 67.

In this case, Defendant testified that on 18 May 2003, he had taken five Demerol, which made him feel "in a fog." He then testified that when he was inside the building he felt nauseous. This was the only testimony as to Defendant's mental condition. No other evidence was admitted regarding Defendant's mental condition.

Defendant's two statements regarding his mental condition were insufficient to create a reasonable doubt in the juror's minds that Defendant was unable to form the specific intent necessary to commit the crime of breaking and entering. *Clark,* 324 N.C. at 163, 377 S.E.2d at 64. The trial court did not err in not instructing the jury on diminished capacity.

**[4]** Next, Defendant contends that the trial court erred in sentencing him within the aggravated range in violation of his Sixth Amendment right to a jury trial. *See Blakely v. Washington,* 542 U.S. 296, 159 L. Ed. 2d 403 (2004). Since Defendant's sentence falls within the presumptive range, we disagree.

The trial court sentenced Defendant to a minimum of 133 months imprisonment. The trial court also made findings of aggravating and mitigating factors. Defendant had a Level IV prior record level and was sentenced for a Class C felony. The presumptive range for that combination is a minimum sentence from 107 to 133 months. N.C. Gen. Stat. § 15A-1340.17(c) (2004). But a minimum of a 133 months overlaps with the minimum range for an aggravated sentence, which is 133 to 167 months. N.C. Gen. Stat. § 15A-1340.17(c). However, since Defendant's punishment falls within the presumptive range, our Supreme Court has made it clear that no factors need be presented to the jury. *State v. Allen,* 359 N.C. 425, 437, 615 S.E.2d 256, 265 (2005) ("[A]ny fact that increases the penalty for a crime *beyond the prescribed presumptive range* must be submitted to a jury and proved beyond a reasonable doubt." (emphasis added)). Accordingly, since Defendant's sentence falls within the presumptive range, the trial court's findings of aggravating factors not admitted by Defendant or submitted to the jury did not violate *Blakely.*

**[5]** Finally, Defendant argues that his sentence, as an habitual felon, is cruel and unusual punishment in violation of his Eighth Amendment rights. We disagree.

This Court recently held in *State v. Quick*, 170 N.C. App. 166, 170, 611 S.E.2d 864, 867 (2005), that "nothing in the Eighth Amendment prohibits our legislature from enhancing punishment for habitual offenders." We further noted that "[o]ur habitual felon statute is the result of a deliberate policy choice by the legislature that those who repeatedly commit felonious criminal offenses should be segregated from the rest of society for an extended period of time." *Id.* at 170, 611 S.E.2d at 866-67 (citing *State v. Aldridge*, 76 N.C. App. 638, 640, 334 S.E.2d 107, 108 (1985)). Our Supreme Court has stated that " '[o]nly in exceedingly unusual non-capital cases will the sentences imposed be so grossly disproportionate as to violate the Eighth Amendment's proscription of cruel and unusual punishment.' " *State v. Todd*, 313 N.C. 110, 119, 326 S.E.2d 249, 254 (1985) (quoting *State v. Ysaguire*, 309 N.C. 780, 786, 309 S.E.2d 436, 441 (1983)). In this case, Defendant was sentenced within the presumptive range of our statutory scheme as defined by Chapter 15 of the North Carolina General Statutes. Furthermore, we do not find that the case was "exceedingly unusual." For these reasons, we conclude that Defendant's habitual felon sentence did not violate his Eighth Amendment rights.

No error.

Judges McGEE and GEER concur.