STATE OF NORTH CAROLINA v. DAVON JAMAR ANDERSON, Defendant

No. COA05-1520

(Filed 20 February 2007)

**1. Kidnapping— home invasion—release in a safe place— more than relinquishing control required**

There was sufficient evidence that the victims were not released in a safe place for the submission of charges of first-degree kidnapping to the jury where defendant participated a home invasion, moved the residents of the home within the house and garage, and fled the scene after an altercation with one of the residents and after the police were called. Defendant's constructive presence lingered, and release must be more than the relinquishment of dominion or control over a person.

**2. Kidnapping— home invasion—confinement, removal or restraint—independent of burglary and armed robbery**

The State presented sufficient evidence to allow the jury to conclude that defendant committed acts of confinement, removal, or restraint with respect to each victim separate and independent of his commission of burglary and armed robbery.

**3. Evidence— victims upset—relevant to lives being threatened**

There was no plain error in an armed robbery prosecution in the admission of testimony that the victims were upset, emotional, distressed, and scared during the crime. The testimony suggests that the victims' lives were endangered and threatened by defendant's actions; endangering or threatening human life is the gravamen of armed robbery.

**4. Evidence— hearsay—defendant suspected by victim— other evidence of identity**

There was no plain error in the admission of testimony from a detective that the victim of a home invasion had told him that he suspected defendant, even if this testimony was hearsay, where fingerprint evidence was sufficient to allow a reasonable jury to identify defendant as a perpetrator of the crimes.

**5. Kidnapping— instructions—use of disjunctive—not consistent with indictment**

There was no plain error in the jury instructions on kidnapping which used "or" between the methods of accomplishing the

STATE v. ANDERSON

[181 N.C. App. 655 (2007)]

crime (confining, restraining, or removing) rather than "and" as used in the indictment.

**6. Sentencing— plea bargain refusal mentioned—sentence less than plea bargain—no plain error**

There was no plain error in the sentencing of defendant for armed robbery and kidnapping where the prosecutor mentioned defendant's rejection of a plea bargain, but defendant did not object and received a lesser sentence than he would have received had he taken the plea bargain.

Appeal by defendant from judgments entered 5 May 2005 by Judge James C. Spencer, Jr. in Wake County Superior Court. Heard in the Court of Appeals 23 August 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Christopher W. Brooks, for the State.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III and Kirby H. Smith, III, for defendant-appellant.*

GEER, Judge.

Defendant Davon Jamar Anderson appeals from his convictions for one count of assault with a deadly weapon with intent to kill inflicting serious injury, one count of first degree burglary, three counts of robbery with a dangerous weapon, and six counts of first degree kidnapping. On appeal, defendant argues primarily that the trial court erred by denying his motion to dismiss the kidnapping charges for insufficiency of the evidence. Because we conclude that the State presented sufficient evidence to permit a jury to conclude that none of the victims was released by the defendant in a safe place and that each victim was subject to an act of confinement, restraint, or removal independent of that inherent in armed robbery and burglary, we disagree. Since we have found defendant's other assignments of error to be without merit, we uphold his convictions and sentence.

### Facts and Procedural History

The State's evidence tended to show the following facts. Tamara Edwards lived in a rented house at 4613 Windmere Chase in Raleigh with her twelve-year-old son, D.E.; her seven-year-old daughter, C.E.; Edwards' friend, Donyelle Norris; and Norris' four-year-old daughter, D.N. Edwards' boyfriend, Aaron Richards, also lived there. At about

10:00 p.m. on the evening of 12 September 2004, the children were asleep in their bedrooms, Norris was in her bedroom, and Edwards and Richards were in their bedroom. When the doorbell rang, Richards went downstairs to answer the door. Through the door's window, he saw a person standing on the stoop holding a pizza box. Although no one in the household had ordered a pizza, Richards, assuming the pizza delivery man was at the wrong address, opened the door so that he could give directions.

As soon as Richards opened the door, the man on the stoop dropped the pizza box and entered the house. He was followed by defendant, who was wearing a black mask and had been standing unseen by the side of the house. Both intruders brandished guns and demanded drugs, money, and valuables from Richards. When Richards replied that he had nothing of value to give them, defendant put his gun in Richards' back and directed him upstairs to the bedroom he shared with Edwards. Defendant then took about $30.00 out of Richards' wallet, which was sitting on the dresser.

Meanwhile, the other intruder, whose name was Antonio Teasley, woke the sleeping children and assembled all the occupants of the house except for Richards in Norris' bedroom. He then demanded money from Edwards and Norris. When defendant brought Richards down the hallway to Norris' bedroom, Richards claimed—in an attempt to draw defendant and Teasley away from the house—that he had money at another location. After conferring, the intruders agreed that Teasley would go with Richards to get the money, while defendant would stay at the house and guard the women and children.

After Richards and Teasley left, defendant began searching the house while continuing to demand money from the women. When the women insisted that they had none, defendant directed Edwards to begin filling trash bags with valuables, including Edwards' purse collection and a camcorder. He also took some jewelry from Edwards. He then tied the women's hands behind their backs with cord.

Meanwhile, Teasley conducted Richards at gunpoint downstairs and outside to the car in which Teasley and defendant had arrived. Teasley directed Richards to the passenger side, while he got in the driver's side. Teasley drove with the gun in his lap, while Richards used his cell phone to call Kenneth Kirby, Edwards' brother-in-law. He asked Kirby to "bring the money" and meet at a Food Lion near Kirby's house. Teasley and Richards drove to the Food Lion, and both men got out of the car to wait for Kirby. When Kirby arrived, Richards

and he were able to overpower Teasley and take his gun. Kirby and Richards then forced Teasley into Kirby's car, and the three men returned to 4613 Windmere Chase.

When they arrived, they parked around the corner so defendant could not see that they had arrived in a different car. Richards knocked on the front door of the house. Defendant put his gun in Edwards' back and walked her down the stairs to answer the door. When defendant opened the door, he asked Richards about the money. Richards replied that Teasley was outside in the car, that he had the money, and that he was "ready to go." Defendant held Edwards and the gun with one hand and began trying to search Richards with the other, but Richards lunged at him and grabbed at the hand that held the gun. During the struggle, defendant shot Richards twice in the chest, once in the back, and once in the arm.

Defendant left Richards lying near the front door and fetched Norris from upstairs, leaving the children by themselves. He then forced Norris and Edwards into the garage at gunpoint. As they entered the garage, Edwards tripped and fell to the ground, blacking out as she did so. Defendant's gun went off as Edwards tripped, but the bullet lodged harmlessly in a car in the garage. Believing, however, that Edwards had been shot, defendant and Norris went back to the front of the house. As he was bringing Norris towards the front door, defendant heard Richards, who was still conscious, calling the police on his cell phone. Defendant shot his gun into the air two more times and then ran out the back door.

Defendant was later apprehended and charged with one count of assault with a deadly weapon with intent to kill inflicting serious injury, one count of first degree burglary, three counts of robbery with a dangerous weapon, and six counts of first degree kidnapping. Following a jury trial in May 2005, defendant was convicted on all counts. After defendant stipulated that his prior record level was III, the trial court imposed consecutive sentences as follows: 28 to 43 months on the assault conviction, 96 to 125 months on the first degree burglary conviction, 96 to 125 months for the consolidated robbery convictions, and 116 to 149 months for the consolidated kidnapping convictions. He filed a timely appeal to this Court.

## Motion to Dismiss

[1] Defendant argues on appeal that the trial court erred by denying his motion to dismiss the charges against him for insufficiency of the evidence. Although defendant assigned error with respect to each of

the charges brought, he confined the argument in his brief to the first degree kidnapping charges. We, accordingly, do not examine the trial court's denial of defendant's motion to dismiss the other charges. N.C.R. App. P. 28(b)(6) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

In ruling upon a motion to dismiss, the trial court must determine if the State has presented substantial evidence of each essential element of the offense. *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255, *cert. denied*, 537 U.S. 1006, 154 L. Ed. 2d 404, 123 S. Ct. 488 (2002). " 'Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion.' " *Id.* (quoting *State v. Parker*, 354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162, 122 S. Ct. 2332 (2002)). In considering the motion, the trial court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence, and resolving any contradictions in favor of the State. *Id.*, 561 S.E.2d at 256.

Under N.C. Gen. Stat. § 14-39(a) (2005), a defendant is guilty of kidnapping if he "shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent," for one of four specified purposes, including "(1) Holding such other person for a ransom or as a hostage or using such other person as a shield; or (2) Facilitating the commission of any felony . . .; or (3) Doing serious bodily harm to or terrorizing the person . . . ." For the defendant to be convicted of first degree kidnapping, the State must also prove one of three additional elements: that the person kidnapped (1) was not released in a safe place, (2) was seriously injured, or (3) was sexually assaulted. N.C. Gen. Stat. § 14-39(b). In the absence of one of the elements set forth in N.C. Gen. Stat. § 14-39(b), the defendant is guilty of second degree kidnapping. *Id.*

Here, defendant argues that the State offered no evidence of the elements listed in § 14-39(b). The State relied upon the first element: the failure to release the victims in a safe place. This Court has recently held that a "release" is more than the mere "relinquishment of dominion or control over a person." *State v. Love*, 177 N.C. App. 614, 625-26, 630 S.E.2d 234, 242, *disc. review denied*, 360 N.C. 580, 636 S.E.2d 192-93 (2006). Rather, a " 'release' inherently contemplates an affirmative or willful action on the part of a defendant." *Id.* at

STATE v. ANDERSON

[181 N.C. App. 655 (2007)]

625-26, 630 S.E.2d at 242. The *Love* Court stated that the defendants did not affirmatively or willfully release the victims when they bound the victims to chairs in their own home, ransacked the house for valuables, re-checked the bindings immediately before leaving, and threatened to return. The Court reasoned that although "defendants may have physically left the premises, . . . through their active intimidation, they left the victims with a constructive presence." *Id.* at 626, 630 S.E.2d at 242.

With respect to Edwards and Norris, we hold that the State's evidence was sufficient to allow the jury to consider whether they had been released in a safe place. With respect to the requirement of an affirmative and willful "release" under *Love*, Norris testified that after defendant fled, she was initially unsure as to his whereabouts. The police also felt that the scene was still unsafe when they arrived soon after Richards' phone call. Thus, it is apparent that defendant's "constructive presence" lingered, since the victims and, later, the police were uncertain as to whether defendant had actually relinquished his victims and vacated the premises. *Id.* at 625-26, 630 S.E.2d at 242. The fact pattern with respect to Edwards and Norris mirrors the fact pattern in *Love*, where the victims were left bound in their home with uncertainty as to the kidnappers' whereabouts. In such circumstances, we believe that the facts, taken in the light most favorable to the State, permit a reasonable inference that no "release" took place.

With respect to the three children, again viewing the evidence in the light most favorable to the State, we also hold that there was sufficient evidence at trial to allow the jury to conclude that defendant did not "affirmative[ly] and willful[ly]" release them. *Id.* at 626, 630 S.E.2d at 242. Instead, the State's evidence tended to show that defendant simply left the children upstairs in the same room where they were initially confined while he forced their mothers downstairs one by one. The Court in *Love* required "an affirmative action other than the mere departing of a premise." *Id.* at 626, 630 S.E.2d at 242. A jury could have reasonably found that defendant simply departed the upstairs and engaged in no other affirmative action to release the children.

Finally, with respect to Richards, there was also sufficient evidence from which the jury could conclude that defendant did not "release" him. In fact, defendant merely entrusted Richards into the care of Teasley, instructing Teasley to take Richards elsewhere and force Richards to give him money. Moreover, Richards only obtained

his freedom from Teasley when Richards and Kirby overwhelmed Teasley at the Food Lion. This Court has previously held that a victim's overpowering of his kidnapper does not constitute a release for purposes of first degree kidnapping. *State v. Raynor*, 128 N.C. App. 244, 251, 495 S.E.2d 176, 180 (1998) (victim overwhelmed defendant and his accomplice in victim's house, and defendant fled; victim not released in a safe place).[1]

**[2]** Defendant also argues that the kidnapping charges should not have been submitted to the jury because there was no evidence of confinement, restraint, or removal beyond that inherent in the crimes of burglary and armed robbery. Our Supreme Court has held:

> It is self-evident that certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed without some restraint of the victim. We are of the opinion, and so hold, that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy. Pursuant to the above mentioned principle of statutory construction, we construe the word "restrain," as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony.

*State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978); *see also State v. Weaver*, 123 N.C. App. 276, 281, 473 S.E.2d 362, 365 (holding that a kidnapping conviction violates double jeopardy principles unless " 'the victim is exposed to greater danger than that inherent in the [separately punished crime] itself or subjected to the kind of danger and abuse the kidnapping statute was designed to prevent' " (quoting *State v. Johnson*, 337 N.C. 212, 221, 446 S.E.2d 92, 98 (1994) (internal quotation marks omitted))), *disc. review denied and cert. denied*, 344 N.C. 636, 477 S.E.2d 53 (1996).

In this case, we hold that the State presented sufficient evidence to allow the jury to conclude that defendant committed acts of confinement, removal, or restraint with respect to each victim, separate and independent of his commission of burglary and armed robbery. With respect to Edwards and Norris, defendant bound them *after* he

---

1. Because we have concluded that the State's evidence was sufficient to permit the jury to conclude that none of the kidnapping victims was released, we need not address defendant's argument that the house constituted a "safe place."

had finished forcing Edwards to load valuables into the trash bags—an independent act of restraint separate from the armed robbery. Similarly, as to the three children, two of whom were under the age of eight, defendant subjected them to danger and abuse, as specified in *Weaver*, by awaking them in the night, confining them in a single room in the house, and brandishing a gun in their presence. Such acts were manifestly unnecessary to the completion of the burglary.[2] Furthermore, defendant held Edwards, Norris, and their children as hostages while he sent Teasley and Richards after money, and he later utilized both Edwards and Norris as human shields while negotiating with Richards. As we have noted, hostage-taking and the use of human shields are abuses specifically listed in the kidnapping statute, N.C. Gen. Stat. § 14-39.

Finally, with respect to Richards, the State's evidence showed that after defendant took Richards to his bedroom and stole the money from Richards' wallet, defendant proceeded to force Richards at gunpoint down the hallway to Norris' room where the rest of the household was assembled. This Court has previously held that taking a victim from one room to another room is an independent act of removal and restraint, when, as here, "the rooms where the victims were ordered to go did not contain . . . property to be taken." *State v. Joyce*, 104 N.C. App. 558, 567, 410 S.E.2d 516, 521 (1991), *cert. denied*, 331 N.C. 120, 414 S.E.2d 764 (1992).

In sum, we hold that the State presented sufficient evidence to permit a jury to conclude that none of the victims was released by defendant and that each victim was subject to an act of confinement, restraint, or removal independent of that inherent in armed robbery and burglary. Therefore, we conclude the trial court did not err by denying defendant's motion to dismiss the kidnapping charges.

## Plain Error

Defendant also argues on appeal that the trial court committed plain error (1) by allowing Edwards and Norris to testify as to their emotional state as events transpired the night of the crime; (2) by allowing a police officer to testify about statements made to him by Richards during the investigation of the crime that ultimately led to the identification and arrest of defendant; and (3) by failing to properly instruct the jury on the elements of kidnapping. This Court may reverse for plain error

---

2. Defendant was not charged with armed robbery of the children.

"only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *'fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" ' or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said '[the error] had a probable impact on the jury's finding that the defendant was guilty.' "

*State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (first alteration in original) (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir.), *cert. denied,* 459 U.S. 1018, 74 L. Ed. 2d 513, 103 S. Ct. 381 (1982)).

A. Testimony from Edwards and Norris

[3] Defendant first contends that the trial court committed plain error by permitting Edwards and Norris to testify that they and the children were "upset," "emotional," "distress[ed]", and "scared" while the crime was being committed. Defendant contends that this evidence was irrelevant. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401.

We are not persuaded that the challenged evidence is irrelevant. N.C. Gen. Stat. § 14-87(a) (2005) defines armed robbery as occurring when "[a]ny person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes . . . personal property from another . . . ." Here, the testimony of Edwards and Norris as to their fright suggests their lives were endangered and threatened by defendant's actions. Indeed, our Supreme Court has ruled that the endangering or threatening of human life is the "gravamen" of the offense of armed robbery. *State v. Beaty,* 306 N.C. 491, 499, 293 S.E.2d 760, 766 (1982), *overruled on other grounds by State v. White,* 322 N.C. 506, 369 S.E.2d 813 (1988). Because we believe defendant is mistaken as to the relevance of the challenged testimony, we hold that the trial court did not commit plain error by admitting it.

## B. Detective Griffin's Testimony

[4] Defendant next assigns plain error to the trial court's admission of statements from Detective F. Griffin, Jr. First, defendant contends that Griffin's testimony that Richards told him he suspected defendant was the masked man amounted to inadmissible hearsay. Even assuming, without deciding, that this testimony constituted hearsay, we are unpersuaded that the testimony amounts to plain error in light of the fact that defendant's fingerprints were found both at 4613 Windmere Chase and on the car in which Teasley drove defendant to the Food Lion.[3] Even if the statements by Detective Griffin were excluded, the fingerprint evidence alone is sufficient to allow a reasonable jury to identify defendant as a perpetrator of the crimes in question. Therefore, we cannot say that the admission of the statements resulted in a miscarriage of justice or had a probable impact on the outcome of the trial. *See Odom*, 307 N.C. at 660, 300 S.E.2d at 378.

## C. Jury Instructions

[5] Defendant next argues that the trial court committed plain error because the jury instructions on kidnapping did not parallel the language in the indictments. Each indictment in this case alleged defendant kidnapped the victim by "confining *and* restraining *and* removing" the victim (emphases added), whereas the trial court instructed the jury that it could find defendant guilty if it believed defendant "confined the person—that is, imprisoned him or her within a given area; restrained the person—that is, restricted his or her freedom of movement; *or* removed a person from one place to another." (Emphasis added.) Defendant assigns plain error to the trial court's use of the disjunctive "or" in the jury instructions rather than the conjunctive "and" used in the indictments.

This Court rejected an identical argument in *State v. Lancaster*, 137 N.C. App. 37, 48, 527 S.E.2d 61, 69, *disc. review denied in part and remanded in part*, 352 N.C. 680, 545 S.E.2d 723 (2000). In *Lancaster*, the Court noted that an indictment alleging all three kidnapping theories is sufficient to put a defendant on notice that he will have to defend on the basis of all three. *Id.* Therefore, the Court con-

---

3. With respect to these fingerprints, defendant contends that they were inadmissible because the State failed "to establish a foundation for why the Defendant-Appellant was required to give known fingerprint exemplars to the State." Since defendant has cited no authority suggesting that the State was required to establish such a foundation, we disregard this argument. N.C.R. App. P. 28(b)(6).

cluded, a jury instruction that allows conviction upon any one of the three theories alleged in the indictment cannot be erroneous. *Id.* Since we find *Lancaster* to be materially indistinguishable from the present case, this assignment of error is overruled.

We note that defendant's reliance on *State v. Dominie*, 134 N.C. App. 445, 518 S.E.2d 32 (1999), is misplaced. In *Dominie*, this Court granted defendant a new trial after the indictment charged defendant only with "removing" the victim, but the trial court instructed the jury that it could convict defendant if it found he "restrained or removed" the victim. *Id.* at 448, 518 S.E.2d at 34. Such a situation is altogether different from the present case, in which all the theories upon which the jury was instructed appear in the indictment.

### Mention of Plea Bargain During Sentencing

[6] Defendant's final argument on appeal assigns error to the sentencing phase of his trial, in which the prosecutor requested eleven consecutive sentences for defendant. In the course of the prosecutor's argument, he mentioned defendant's rejection of a plea bargain. We note that defendant did not object to this comment at the time it was made and that plain error review is limited to review of jury instructions and evidentiary matters. *State v. Greene*, 351 N.C. 562, 566, 528 S.E.2d 575, 578, *cert. denied*, 531 U.S. 1041, 148 L. Ed. 2d 543, 121 S. Ct. 635 (2000).

Even assuming *arguendo* that defendant's objection was properly preserved for appellate purposes, we hold that any error that might have resulted from the prosecutor's argument was harmless. Defendant did not, in fact, receive the eleven consecutive sentences that the prosecution requested. Rather, the trial judge chose to consolidate the six kidnapping convictions and the three armed robbery convictions for sentencing purposes. As the State notes in its appellate brief, defendant actually received from the trial court a lesser sentence than he would have received had he accepted the prosecution's plea bargain—a convincing indication that defendant was not prejudiced by the prosecution's mention of defendant's rejection of the plea bargain. Accordingly, we overrule defendant's final assignment of error.

No error.

Judges CALABRIA and JACKSON concur.