STATE OF NORTH CAROLINA v. DENNIS TYRONE GARNETT, SR.

No. COA10-111

(Filed 15 February 2011)

**1. Constitutional Law— right to confrontation—expert testimony—analysis performed by non-testifying analyst—erroneous—no prejudicial error**

The trial court erred in a drugs case by permitting the State's expert witness to testify to the identity and weight of the substance seized during a search of defendant's apartment and vehicle where the expert's testimony was based upon an analysis performed by a non-testifying forensic analyst. However, in light of the additional evidence presented at trial and the Court's plain error review, the erroneously admitted testimony did not prejudice defendant such that the jury would have reached a different conclusion had the testimony not been admitted.

**2. Drugs— jury instructions—controlled substances—variance between indictment and instruction—no prejudicial error**

The trial court did not commit reversible error in a drugs case where the pertinent indictment charged defendant with maintaining a dwelling house "for keeping and selling a controlled substance" but the court instructed the jury that to find defendant guilty of the charge, the State must prove that Defendant "maintained a dwelling house used for the purpose of unlawfully keeping or selling marijuana." *State v. Lancaster*, 137 N.C. App. 37, was controlling.

**3. Sentencing— mitigating factors—presumptive range—no abuse of discretion**

The trial court did not abuse its discretion in refusing defendant's request for a mitigated sentence. Despite uncontroverted evidence of mitigating circumstances, it was within the trial court's discretion not to find any mitigating factors and to sentence defendant in the presumptive range.

Appeal by Defendant from judgment entered 16 October 2008 by Judge Zoro J. Guice, Jr. in Buncombe County Superior Court. Heard in the Court of Appeals 31 August 2010.

*Attorney General, Roy Cooper, by Kimberly W. Duffley, Assistant Attorney General, for the State.*

*Paul M. Green for Defendant-appellant.*

HUNTER, JR., Robert N., Judge.

By writ of certiorari, Dennis Tyrone Garnett, Sr., ("Defendant") appeals from an order imposing 168 to 211 months' imprisonment entered pursuant to his jury conviction for multiple drug related charges and his subsequent guilty plea for additional drug related and habitual felon charges. Defendant contends the trial court: committed plain error by permitting the State's forensic chemist to testify as to the identity and weight of the marijuana analyzed by a non-testifying chemist in violation of Defendant's constitutional rights to confront the witnesses testifying against him; erred by charging the jury with an instruction that varied from the language of the indictment; and abused its discretion by declining to find mitigating factors despite

uncontested evidence of such factors. After a careful review of the record, we find no prejudicial error.

## I. Factual and Procedural Background

On 19 June 2008, officers of the Asheville Police Department obtained and executed a warrant to search Defendant, the residence he shared with his girlfriend, and a vehicle that Defendant had been observed driving. The police obtained the search warrant as a result of their investigation of Defendant's suspected drug related activities. At trial the State's evidence tended to establish the following facts.

When officers arrived outside of Defendant's residence they found Defendant and several other individuals standing around the vehicle that was to be searched. The police observed Defendant walking toward the rear tire of the car then back away from the tire as the officers exited their patrol car. The officers immediately handcuffed and searched Defendant and read to Defendant his *Miranda* rights; Defendant acknowledged that he understood these rights. On Defendant's person, the police found approximately four thousand dollars ($4,000.00) in cash and two cell phones.

The police officers executed a search of the vehicle's exterior with a drug-sniffing K-9 during which the K-9 alerted to the right rear tire well. There, the officers found a black bag containing several smaller bags of what appeared to be marijuana and cash. Upon searching the interior of the vehicle, the officers found a purse containing a .22 caliber pistol and bullets located in the compartment for the carjack. In the compartment between the front seats, the police found two additional bags, each containing hundreds of smaller, empty, black bags similar to the bags found in the rear tire well.

Upon searching Defendant's residence, the officers found: nine "dime bags" of what appeared to be marijuana in a bowl on top of the television in the living room; a Nike bag in the master bedroom closet, to which the K-9 had alerted, that contained two gallon-sized bags containing what appeared to be marijuana; letters addressed to Defendant with the address of the residence being searched; a police scanner; and a make-up case also containing a small amount of what appeared to be marijuana. The officers estimated the total weight of the alleged marijuana seized to be approximately one hundred and fifty-one (151) grams.

Two police officers testified that during the search of the vehicle and Defendant's apartment, after Defendant was read his *Miranda*

rights, Defendant made several incriminating statements. Officer Tammy Bryson testified that when Defendant was asked about the alleged drugs found in the car Defendant stated he smoked the marijuana, but did not sell it. Later, when escorted inside his residence and in the presence of his girlfriend, Defendant told the police that all of the alleged marijuana found was his and he was selling it; that his girlfriend did not sell it, she only smoked the marijuana. Additionally, two officers testified that Defendant told them he could provide the names of people from whom he received his supply of marijuana if his cooperation would mitigate the charges against him.

Defendant was indicted by a Buncombe County Grand Jury on 7 July 2008 for possession with intent to sell or deliver a Schedule VI controlled substance, marijuana, pursuant to N.C. Gen. Stat. § 90-95(A)(1); knowingly and intentionally keeping and maintaining a dwelling house for keeping and selling a Schedule VI controlled substance, marijuana, pursuant to N.C. Gen. Stat. § 90-108(A)(7); possession of a firearm by a felon, pursuant to N.C. Gen. Stat. § 14-415.1; and possession of drug paraphernalia, pursuant to N.C. Gen. Stat. § 90-113.22. The date of these offenses was 19 June 2008. Additionally, Defendant was indicted for being a habitual felon based on three prior felony convictions, pursuant to N.C. Gen. Stat. § 14-7.1. The trial court decided, however, to hold the habitual felon charge for consideration until after the jury returned verdicts on the other four charges.

Defendant was tried before Judge Zoro J. Guice, Jr. during the 13 October 2008 Session of the Buncombe County Criminal Superior Court. Before the jury was empaneled, Defendant made a Motion to Suppress seeking to exclude from evidence the statements he made to police on the day of the search; Defendant alleged that he was not properly advised of his *Miranda* rights at the time he made the statements. After a hearing on the motion, the trial court found Defendant had been properly advised of his *Miranda* rights, that he acknowledged he understood them, that the statements he made to the police were made voluntarily and, thus, admissible into evidence.

On 16 October 2008, the jury returned guilty verdicts for each of the indictments; the habitual felon indictment was not before the jury. Defendant then pled guilty to additional charges: one charge of possession of drug paraphernalia, pursuant to N.C. Gen. Stat. § 90-113.22; one charge of knowingly and intentionally keeping and maintaining a dwelling house for keeping and selling a Schedule·

VI controlled substance, marijuana, pursuant to N.C. Gen. Stat. § 90-108(A)(7); and one charge of possession with intent to sell or deliver a Schedule VI controlled substance, marijuana, pursuant to N.C. Gen. Stat. § 90-95(A)(1). The date of these offenses was 12 September 2008. Defendant also pled guilty to two charges of being a habitual felon, pursuant to N.C. Gen. Stat. § 14-7.1. In exchange, Defendant's sentences for the charges for which he was found guilty would run concurrently with the sentences for the charges to which he pled guilty. Defendant was sentenced on 16 October 2008 in the presumptive range of authorized sentences to an active term of 168 to 211 months' imprisonment. After pronouncement of his sentence, Defendant informed the court he would not appeal. On 21 April 2009, however, Defendant filed a Petition for Writ of Certiorari, which this Court granted pursuant to section 7A-32 of our General Statutes and Rule 21 of the North Carolina Rules of Appellate Procedure. N.C. Gen. Stat. § 7A-32 (2009); N.C. R. App. P. 21 (2011).

## II. Analysis

### A. Admissibility of Expert's Testimony

[1] On appeal, Defendant first contends that the trial court erred in permitting the State's expert witness to testify as to the identity and weight of the "leafy green plant substance" seized where the expert's testimony was based upon the analysis performed by a non-testifying forensic analyst. Defendant argues this testimony was admitted in violation of his constitutional right to confront the witnesses testifying against him pursuant to the United States Supreme Court's decision in *Melendez-Diaz v. Massachusetts*, —— U.S. ——, ——, 129 S. Ct. 2527, 2532 (2009), and the North Carolina Supreme Court's holding in *State v. Locklear*, 363 N.C. 438, 452, 681 S.E.2d 293, 305 (2009). While this testimony was admitted in violation of Defendant's rights under the Confrontation Clause, we nevertheless conclude this error was not prejudicial in light of the additional evidence of Defendant's guilt.

Defendant concedes that he made no objection at trial to the admission of the State's expert's testimony and that he thereby waived his right to object on appeal under our Rules of Appellate Procedure. N.C. R. App. P. 10(a)(1) (2011). Defendant, however, requests this Court to examine the issue for plain error. N.C. R. App. P. 10(a)(4) (2011). " 'Plain error' has been defined as including error so grave as to deny a fundamental right of the defendant so that, absent the error, the jury would have reached a different result." *State*

*v. Jones,* —— N.C. App. ——, ——, —— S.E.2d ——, ——, No. 10-475, slip op. at 3 (Dec. 21, 2010) (citation omitted), *temporary stay allowed,* —— N.C. ——, —— S.E.2d ——, 2011 N.C. LEXIS 6 (Jan. 10, 2011).

The Confrontation Clause of the Sixth Amendment prohibits the introduction of testimonial evidence unless the declarant is not available for cross-examination and the defendant has had a prior opportunity to cross-examine the declarant. *Crawford v. Washington,* 541 U.S. 36, 53-54 (2005). While the Supreme Court has not provided a precise definition of testimonial evidence, the Court has established that laboratory reports, or "certificates of analysis," showing the results of forensic analyses of evidence seized by the police are testimonial in nature and are subject to the Confrontation Clause. *Melendez-Diaz,* —— U.S. at ——, 129 S. Ct. at 2532 ("The 'certificates' are functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.' ") (internal citation omitted).

In *State v. Locklear,* the North Carolina Supreme Court applied the holding of *Melendez-Diaz* to conclude that the Confrontation Clause prohibits the introduction of the live testimony by an expert witness whose expert opinion is based upon the results of non-testifying analysts. 363 N.C. at 452, 681 S.E.2d at 305; *State v. Galindo,* —— N.C. App. ——, ——, 683 S.E.2d 785, 788 (2009) (holding testimony of crime lab supervisor was inadmissible under the Confrontation Clause as his opinion was based "solely" upon the laboratory report produced by a non-testifying analyst).

Subsequent to *Locklear* and *Galindo,* this Court recognized an exception which would permit the admittance of expert testimony when the expert testified "not just to the results of other experts' tests, but to her own technical review of these tests, her own expert opinion of the accuracy of the non-testifying experts' tests, and her own expert opinion based on a comparison of the original data." *State v. Mobley,* —— N.C. App. ——, ——, 684 S.E.2d 508, 511-12 (2009), *disc. review denied,* 363 N.C. 809, 692 S.E.2d 393 (2010); *State v. Hough,* N.C. App. ——, ——, 690 S.E.2d 285, 291 (2010) (holding no Confrontation Clause violation where testifying expert did not perform any forensic analysis on the evidence, but conducted a "peer review" of the testing analyst's work sufficient to establish her own expert opinion). Significantly, however, in *Hough* this Court recognized that *not* "every 'peer review' will suffice to establish that the testifying expert is testifying to his or her expert opinion." ——

N.C. App. at ——, 690 S.E.2d at 291. This distinction has been applied by this Court in the recent decisions of *State v. Brewington,* —— N.C. App. ——, 693 S.E.2d 182, *temporary stay allowed,* 364 N.C. 243, 698 S.E.2d 73 (2010), and *State v. Williams,* —— N.C. App. ——, —— S.E.2d ——, No. 10-58 (Dec. 7, 2010), *temporary stay allowed,* —— N.C. ——, —— S.E.2d —— (Dec. 20, 2010).

In *Williams,* this Court held as inadmissible the testimony of the State's expert witness where the expert witness had conducted a peer review of the testing analyst's examination of the seized evidence. *Williams,* —— N.C. App. at ——, —— S.E.2d at ——, slip op. at 9. We concluded the State's expert witness "could not have provided her own admissible analysis of the relevant underlying substance" where she did not conduct any tests on the seized evidence and was not present when the testing analyst performed his analysis. *Id.* The rejection of the peer review testimony in *Williams* was warranted, we noted, in light of the "importance of cross-examination as a tool to expose, among other things, the care (or lack thereof) with which a chemist conducted tests on a substance" which could not be assessed by a mere summary of the underlying analyses provided by the State's expert witness. *Id.*

In the present case, we conclude the testimony by the State's expert witness as to the results of the analysis of the evidence seized from Defendant is indistinguishable from the testimony rejected in *Williams.* At trial the State called Special Agent Jay Pintacuda, a senior forensic chemist for the State Bureau of Investigation ("SBI"), to testify as to the identity and weight of the "leafy green plant substance" that was seized during the search of Defendant's apartment and the vehicle. Pintacuda was certified by the trial court, without objection, as an expert witness in forensic chemistry. It is evident from the record that Pintacuda did not perform the SBI's analysis of the seized evidence. Rather, a testing analyst, Robert Briner, conducted the SBI's forensic analysis and completed a laboratory report averring to the weight and identity of the substance seized from Defendant. When Pintacuda was asked to describe his role with the SBI, he stated:

> As a senior forensic chemist my job includes the review of *other work product of other chemists.* I examine *their* notes, lab reports for technical and administrative review and to make sure that the work product, lab reports going out, meet quality control,

quality assurance guidelines and policies and procedures of the State Bureau of Investigation.

(Emphasis added.) When asked if he had reviewed Briner's report and conclusions regarding the evidence at issue in this case, Pintacuda responded, "I have *documentation* here and I have had occasion to examine it to review the findings and work product and determine if it meets the quality assurance guidelines of the SBI laboratory." (Emphasis added.)

The State then directed Pintacuda's attention to a bag of "plant material" confiscated in Defendant's apartment and asked Pintacuda:

Q: [I]s there anything on 5A [a bag of the seized plant material] to show that *Mr. Briner* examined that item and performed *the analysis that you've reviewed* and that *he came* to some conclusion of what that substance was?

A: Yes.

Q: How do you know that?

A: The writing on the outside surface is the SBI crime laboratory number, the initials, the date and the exhibit number.

. . . .

*Robert Briner had occasion to examine it and identified it* as being marijuana, and *he recorded* the weight in the lab report.

. . . .

*He identified* this plant material as being marijuana . . . . *He weighed* the material and recorded the weight . . . .

(Emphasis added.) This colloquy is representative of Pintacuda's testimony in which he consistently refers to the conclusions drawn by the testing analyst not conclusions from his own analysis. We find significant that the State's questioning of their forensic expert revealed mistakes made by the testing analyst during his analysis of the evidence. When the State asked Pintacuda to match the State's exhibits, the seized evidence, to the SBI's results on the laboratory report Pintacuda was unable to do so with certainty due to an apparent mix-up by Briner. The State attempted to explain the confusion and asked of Pintacuda: "So [Briner] got it labeled wrong on his report?"; "So he just mislabeled that?"; "He made a mistake?"; and ". . . so that would

be a typographical error—". Pintacuda acknowledged mistakes were made by the testing analyst and attempted to explain the discrepancies in the lab report as just "a labeling issue," surmising, "They comingled everything together in similar bags *from what I can gather.*" (Emphasis added.)

As we recognized in *Williams,* we conclude this testimony demonstrates the necessity for cross-examination of the individuals who perform the forensic analysis of such evidence "so that their honesty, competence, and the care *with which they conducted the tests* in question could be exposed to testing in the crucible of cross-examination." *Williams,* —— N.C. App. at ——, —— S.E.2d at ——, slip op. at 6 (quoting *Brewington,* —— N.C. App. at ——, 693 S.E.2d at 189.) It is apparent from the record that Special Agent Pintacuda's testimony regarding the SBI's laboratory report does not qualify as an independent expert opinion as seen in *Mobley* or *Hough.* Rather it was a summary of the report produced by Briner, the non-testifying analyst. As such, and without the State establishing that Briner was unavailable to testify and that Defendant had the opportunity to cross-examine him on a prior occasion, the admission of Special Agent Pintacuda's testimony regarding the SBI's laboratory report violated Defendant's Confrontation Clause rights. *See Locklear,* 363 N.C. at 452, 681 S.E.2d at 305.

We conclude, however, that in light of the additional evidence presented at trial and our plain error review, Pintacuda's testimony as to the SBI laboratory report did not prejudice Defendant such that the jury would have reached a different conclusion had the testimony not been admitted. *See Jones,* —— N.C. App. at ——, —— S.E.2d at ——, slip op. at 3 (citation omitted). "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt." N.C. Gen. Stat. § 15A-1443(b) (2009). The State must prove the trial court's error was harmless. *Id.* "[T]he presence of overwhelming evidence of guilt may render error of constitutional dimension harmless beyond a reasonable doubt." *State v. Morgan,* 359 N.C. 131, 156, 604 S.E.2d 886, 901 (2004) (citation omitted).

The State introduced overwhelming evidence to support Defendant's convictions for possession of marijuana with intent to sell or deliver and knowingly and intentionally maintaining a dwelling for keeping or selling marijuana: Defendant's physical proximity to the car wheel well where police found several bags of cash and what

appeared to be marijuana, and to which the police K-9 had alerted; hundreds of similar bags located inside the car; observations of Defendant's use of the car and a receipt in Defendant's name for repairs made to the car. Inside Defendant's home the police K-9 altered the officers to a large bag of what appeared to be marijuana in the bedroom closet, "dime bags" and a make-up bag containing a similar substance in other parts of the residence.

Furthermore, Special Agent Pintacuda identified the evidence seized from Defendant as marijuana. We note, this identification was an in-court, visual identification independent from Pintacuda's testimony regarding the SBI's laboratory report. While Pintacuda was tendered as an expert witness in forensic chemistry, this Court has previously held that a police officer experienced in the identification of marijuana may testify to his visual identification of evidence as marijuana:

> Admittedly, it would have been better for the State to have intro-
> duced admissible evidence of chemical analysis of the substance,
> especially in light of the fact that testimony indicated the State
> Bureau of Investigation had conducted such analysis. . . . [T]he
> absence of such direct evidence does not, as the appellant sug-
> gests, prove fatal. Though direct evidence may be entitled to
> much greater weight with the jury, the absence of such evidence
> does not render the opinion testimony insufficient to show the
> substance was marijuana.

*State v. Fletcher*, 92 N.C. App. 50, 57, 373 S.E.2d 681, 686 (1988). Thus, Special Agent Pintacuda's testimony identifying the evidence as marijuana based on his in-court visual identification was properly before the jury.

Most significantly, during the search of the car and residence, and at trial, Defendant admitted that the evidence found was marijuana and that he was selling it. This evidence establishes Defendant's guilt beyond a reasonable doubt. Therefore, Defendant was not prejudiced by the admission of Special Agent Pintacuda's testimony regarding the SBI's chemical analysis and Defendant's argument to the contrary is dismissed.

## B. Jury Instruction

[2] Defendant's second argument on appeal is that the trial court committed reversible error when it charged the jury with an instruction that varied from the language of the indictment. The pertinent indict-

ment charged Defendant with maintaining a dwelling house "for keeping and selling a controlled substance." (Emphasis added.) The trial court, over Defendant's objection, instructed the jury that to find Defendant guilty of the charge the State must prove that Defendant "maintained a dwelling house used for the purpose of unlawfully keeping or selling marijuana." (Emphasis added.) Defendant argues that this discrepancy between the indictment and the jury instruction was prejudicial error as he relied upon the language of the indictment to construct his defense and it permitted the jury to convict him on an abstract theory not supported by the indictment. We must disagree.

"Our Court reviews a trial court's decisions regarding jury instructions *de novo*. 'The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence.' " *State v. Smith*, —— N.C. App. ——, ——, 696 S.E.2d 904, 911 (2010) (citation omitted).

In support of his argument, Defendant attempts to distinguish *State v. Anderson* in which this Court rejected a similar claim. 181 N.C. App. 655, 664-65, 640 S.E.2d 797, 804 (holding it was not plain error for the trial court to instruct the jury that the defendant could be convicted of kidnapping based on the theories of confining, restraining, or removing the victim where the indictment charged the defendant with "confining and restraining and removing" the victim) (emphasis added), *cert. denied*, 361 N.C. 430, 648 S.E.2d 846 (2007). Because the *Anderson* Court's brief opinion relied upon the analysis of the same issue in *State v. Lancaster*, the reasoning outlined in *Lancaster* is instructive for the present case. 137 N.C. App. 37, 46, 527 S.E.2d 61, 67, *disc. review denied in part and remanded in part*, 352 N.C. 680, 545 S.E.2d 723 (2000).

"The purpose of the indictment is to put the defendant on notice of the offense with which he is charged and to allow him to prepare a defense to that charge." *Id.* at 48, 527 S.E.2d at 69. In *Lancaster*, the State utilized the conjunctive "and" in the indictment to charge the defendant with three theories of kidnapping—"confining, restraining and removing" the victim—while the jury instruction permitted a conviction if the jury found defendant confined, restrained or removed his victim. *Id.* at 46, 527 S.E.2d at 67-68 (emphasis added). The *Lancaster* Court distinguished prior decisions wherein one theory of the crime was alleged in the indictment while a different or other the-

STATE v. GARNETT

[209 N.C. App. 537 (2011)]

ories were put before the jury.[1] *Id.* at 47, 527 S.E.2d at 68. Such additional theories in the jury instruction, the Court concluded, were abstract theories not supported by the indictment and it was prejudicial error for the jury to consider them. *Id.* The three theories in the *Lancaster* indictment, however, were the same three theories presented to the jury. *Id.* Thus, the defendant's conviction was supported by the indictment and there was no error. *Lancaster*, 137 N.C. App. at 47, 527 S.E.2d at 68.

The defendant in *Lancaster* also argued that by utilizing "and" to connect the three kidnapping theories in his indictment the State was required to prove the defendant used all three theories in commission of the crime. *Id.* at 48, 527 S.E.2d at 69. The *Lancaster* Court rejected this argument as well, explaining that because an indictment for kidnapping need only allege one statutory theory for the commission of the crime, the fact that the indictment alleged additional theories was not error.[2] *Id.* Rather, the indictment served to put the defendant on notice that the State intended to prove the defendant was guilty via one of the three theories. *Id.* at 48, 527 S.E.2d at 69. Therefore, the use of the disjunctive "or" in the jury instruction properly placed before the jury the three kidnapping theories alleged in the indictment and did not require the State to prove all three theories to support a conviction. *Id.*

We cannot discern any material distinction between *Lancaster* and the present case. Defendant's indictment charged that he maintained a dwelling house "for keeping <u>and</u> selling a controlled substance." (Emphasis added.) Defendant contends he relied upon the language of the indictment to prepare his defense in which he conceded to maintaining his dwelling to *possess* marijuana, but he denied he did so for the purpose of *selling* the marijuana. The jury

---

1. *See State v. Tucker*, 317 N.C. 532, 346 S.E.2d 417 (1986) (holding plain error resulted where indictment charged the defendant with "removing" victim, but jury instruction permitted conviction for "restraining" the victim); *State v. Dominee*, 134 N.C. App. 445, 451, 518 S.E.2d 32, 35 (1999) (holding plain error resulted where indictment alleged kidnapping by "removing" victim, but jury instruction provided for conviction based on "confining, restraining, or removing").

2. *See State v. Birdsong*, 325 N.C. 418, 423, 384 S.E.2d 5, 8 (1989) ("[T]hat the State alleged two factual underpinnings for, or factual theories of [alleged failure to discharge official duties], conviction did not require it to prove both."); *State v. Gray*, 292 N.C. 270, 293, 233 S.E.2d 905, 920 (1977) ("Where an indictment [for first degree rape] sets forth conjunctively two means by which the crime charged may have been committed, there is no fatal variance between indictment and proof when the state offers evidence supporting only one of the means charged.")

instruction, however, permitted a conviction if the State had proven Defendant maintained his dwelling to either keep or sell marijuana. Under *Lancaster*, the trial court did not err when instructing the jury. We are bound by prior opinions of this Court. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). Accordingly, we must conclude that *Lancaster* is controlling and we dismiss Defendant's claim.

## C. Trial Court's Refusal to Find Mitigating Factors

**[3]** Defendant's third and final argument on appeal is that the trial court abused its discretion in refusing Defendant's request for a mitigated sentence despite uncontroverted evidence of mitigating circumstances. We disagree.

Section 15A-1340.16 of the North Carolina General Statutes states that a trial court "shall consider evidence of aggravating or mitigating factors," however, "the decision to depart from the presumptive range is in the discretion of the court." N.C. Gen. Stat. § 15A-1340.16 (2009). "A trial court's weighing of mitigating and aggravating factors will not be disturbed on appeal absent a showing that there was an abuse of discretion." *State v. Rogers*, 157 N.C. App. 127, 129, 577 S.E.2d 666, 668 (2003).

During the sentencing hearing, Defendant presented uncontradicted evidence of the following mitigating factors pursuant to section 15A-1340.16(e): Defendant was suffering from a physical condition that significantly reduced Defendant's culpability; Defendant voluntarily acknowledged wrongdoing early in the criminal process; Defendant accepted responsibility for his criminal conduct; Defendant supports his family; and Defendant has a support system in the community. N.C. Gen. Stat. § 15A-1340.16(e)(3), (11), (15), (17), and (18). The trial court, however, sentenced Defendant within the presumptive range of authorized sentences.

Defendant's reliance on our case law in support of his claim is misplaced. Defendant cites to *State v. Jones*, 309 N.C. 214, 218-19, 306 S.E.2d 451, 454 (1983), as requiring the trial court to find a mitigating factor when evidence of such factor is "uncontradicted, substantial, and there is no reason to doubt its credibility . . . ." *Jones*, however, addressed a sentence imposed in the aggravated range, not the pre-

sumptive range as in the present case. *Id.* at 215, 306 S.E.2d at 453. Additionally, *Jones* was decided under the Fair Sentencing Act, N.C. Gen. Stat. §§ 15A-1340.1 to -1340.7 (*Id.* at 219, 306 S.E.2d at 454), which was repealed effective 1 October 1994 and succeeded by the Structured Sentencing Act, N.C. Gen. Stat. §§ 15A-1340.10 to -1340.33. 1993 N.C. Sess. Laws ch. 538, § 56; 1994 N.C. Sess. Laws ch. 24, § 14(a), (b). Under the Structured Sentencing Act, "[t]he court shall make findings of the aggravating and mitigating factors present in the offense only if, in its discretion, it departs from the presumptive range of sentences . . . ." N.C. Gen. Stat. § 15A-1340.16(c) (2009); *State v. Dorton*, 182 N.C. App. 34, 43, 641 S.E.2d 357, 363, *disc. review denied*, 361 N.C. 571, 651 S.E.2d 225 (2007). This is so even if the evidence of mitigating factors is uncontroverted. *Id.*

It is clear from the record that Defendant offered uncontroverted evidence of mitigating factors to the court. It is also clear that the trial court gave much consideration to this evidence during the sentencing hearing. That the trial court did not, however, find any mitigating factors and chose to sentence Defendant in the presumptive range was squarely in its discretion. We find no error and dismiss Defendant's claim.

### III. Conclusion

After a careful review of the record, we conclude that the admission of the State's forensic laboratory report, identifying the confiscated evidence as marijuana, without affording Defendant the opportunity to cross-examine the analyst who prepared the report violated Defendant's Sixth Amendment Confrontation Clause rights. In light of the additional evidence of Defendant's guilt, however, this error did not rise to the level of plain error. Additionally the trial court did not err by charging the jury with an instruction that deviated from the language of the indictment as it placed before the jury the criminal theories alleged in the indictment and thus properly supported Defendant's conviction. Nor did the trial court abuse its discretion by sentencing Defendant in the presumptive range after considering Defendant's evidence of mitigating factors. Accordingly, we conclude Defendant received a fair trial and we leave the trial court's order undisturbed.

No Error.

Judges HUNTER, Robert C., and LEWIS concur.